SAVOY, Judge.
This case arises out of a collision between an auto owned and driven by plaintiff, Willie Stephens, and a bread truck owned by Cotton Brothers Baking Company, driven by its employee, Roger Miller, and insured by United States Fidelity and Guaranty Company. The accident oc *909 curred on December 30, 1968, on Highway 167 approximately four miles east of Ville Platte, Louisiana, at approximately 2:30 P.M. It had been raining prior to the accident, and the highway was wet.
Defendant’s truck pulled out of a grocery store driveway onto Highway 167 and had proceeded a short distance down the highway when it was struck in the rear by a 1968 Oldsmobile driven by plaintiff. Plaintiff sustained injuries as a result of the accident; the exact nature of which are in dispute.
As a result of the collision and the resulting injuries, plaintiff filed suit against Cotton Brothers Baking Company; its employee, Roger Miller; and their insurer, United States Fidelity and Guaranty Company.
After a trial on the merits, judgment was rendered in favor of plaintiff and against defendants in the amount of $8,000.00. From this judgment defendants have appealed, contending that the trial court erred in absolving plaintiff of negligence; alternatively, in awarding plaintiff $8,000.00 for his damages. Plaintiff has also appealed contending that the damages awarded by the trial judge are inadequate and should be increased.
The trial judge held the defendant driver negligent, and defendants have not contested this ruling in their briefs to this Court. What is contested is the finding of the trial judge that plaintiff was not negligent in hitting the rear of the bread truck, and defendants have cited in support of this position the case of Nevils v. Travelers Insurance Company, 255 So.2d 184 (La.App. 3 Cir. 1971), writ refused La.Supp. 255 So.2d 768.
The facts of the Nevils case, supra, may be distinguished from the base before us. In that case it was established that the motorist who.se car was struck in the rear had seen the approaching vehicle and estimated that it was 1,500 feet away when she pulled out onto the road. It was also established that the Nevils car was totally within its proper lane when the accident occurred.
In the case before us, there is no testimony to establish that the bread truck driver saw plaintiff’s approaching vehicle prior to the collision. A review of the testimony and exhibits also reveals that there is conflicting testimony and evidence as to the exact position of the bread truck at the time of the accident. The driver of the bread truck testified he was totally within his proper lane at the time of the accident, while the testimony of plaintiff and plaintiff’s brother, Floyd Stephens, who was a passenger in plaintiff’s car, indicated that the rear portion of the truck was still across the center line of the highway when the accident occurred. State Trooper Floyd Ortego testified he investigated the accident and took photographs of the accident site. These photographs show damage to the left rear portion of the bread truck and to the right portion of plaintiff’s car. In view of the conflicting testimony and evidence, we find that there is sufficient evidence to support the finding of the trial judge that plaintiff was not contribu-torily negligent.
We next address ourselves to the award made to plaintiff by the district judge of $8,000.00. Counsel for appellants contend that the award is excessive and should be reduced substantially.
The medical testimony consisted of Drs. Charles N. Washington, Daniel H. Buller, R. Luke Bordelon, James S. Dugal, and D. M. Kingsley. All of these doctors, with the exception of Dr. Kingsley, were examined initially on behalf of plaintiff.
Plaintiff was first seen by Dr. Charles N. Washington, a general practitioner, in the emergency room of the Opelousas General Hospital in Opelousas, Louisiana, on December 30, 1968. Plaintiff was admitted on that occasion for injuries received in an automobile accident on that date. The plaintiff remained in the hospital through January 5, 1969. X-rays revealed a fracture *910 of the elbow, with contusion of the forehead, and a contusion and spraining injury to the left leg, and particularly the left hip. No injuries to the hip were noted while he was in the hospital, but the knee injury was discovered later. Dr. Washington continued to treat plaintiff for some time, and because of plaintiff’s excessive weight, he was placed on a weight reduction regimen. Plaintiff originally weighed 458 pounds, and during a one year period, he lost 68 pounds. Dr. Washington explained that plaintiff complained of pain in the left hip and knee, and that he was of the opinion that with plaintiff’s loss of weight, the pain would lessen.
Plaintiff developed an abscess in the lower leg, for which Dr. Washington referred him to Dr. Daniel Buller. Dr. Bull-er subsequently cared for him in the hospital, excising and draining a rather large abscess in the lower leg.
Dr. Daniel Buller is a physician and specializes in general surgery. He first saw plaintiff on January 16, 1970. He examined plaintiff at his office on 15 occasions, and also treated him as an inpatient in the hospital for complications involving the left leg for approximately three weeks. Plaintiff developed a streptococcus abscess, and this prompted hospitalization and treatment for the infections. Dr. Buller was of the opinion that plaintiff sustained fracture of the right elbow; also a fracture of the left hip, and a crushing injury of the left thigh. He also felt that plaintiff had a chronic hematoma formation, and this had caused subsequent calcification. As of March 23, 1971, the date of Dr. Buller’s deposition, he was of the opinion that plaintiff was presently disabled and would be for the foreseeable future; that he was unable to productively work in any capacity that would involve manual labor.
Dr. Washington also referred plaintiff to Dr. R. Luke Bordelon, orthopedic surgeon, for evaluation. Dr. Bordelon examined plaintiff on March 7, 1969. He made a physical examination, and also reviewed X-rays made by a radiologist of plaintiff’s left hip. It was Dr. Bordelon’s opinion that plaintiff had sustained a straining-type injury superimposed upon a very serious fracture or dislocation of the left hip. He found plaintiff had some difficulty with the elbow in that he had sustained a fracture, and there was some difficulty in regaining full motion. For the complaint to the hip, Dr. Bordelon recommended plaintiff to attempt to reduce his weight. Dr. Bordelon saw plaintiff a second time on July 11, 1969, for re-evaluation, and again on September 12, 1969. The last visit was at the request of defendants. Dr. Bordelon stated that plaintiff had been in a previous accident twenty years prior to the accident in the instant case; that this accident caused a very minimal aggravation of the left hip and knee; that plaintiff’s main impairment was because of calcification that developed in the right elbow and some weakness of the nerve to the hand. This was a permanent physical impairment. He estimated the disability to be 18% of the upper extremity, which would be 9% of the body because of the elbow.
Dr. D. M. Kingsley, orthopedic specialist, examined plaintiff on November 11, 1970. His findings were substantially the same as Dr. Bordelon’s.
Dr. James S. Dugal, radiologist, X-rayed plaintiff on December 30, 1968, and on nine separate occasions after that date. He found plaintiff had a fracture of the boronoid process of the elbow. He found no evidence of fracture of the left knee. As to the hip, the doctor found a large area of calcification overlying the region of the hip. He was of the opinion that there was no fracture of the hip.
Counsel for plaintiff takes the position that the treating physician is in a better position to evaluate the condition of plaintiff since he has seen him and examined him; whereas counsel for defendants contends that this is an orthopedic problem, *911 and the experts in that field are better able to evaluate plaintiff’s condition.
Because of the peculiar facts of this case, we are of the opinion that the testimony of all of the experts in this case should be considered.
It is true that the obesity of plaintiff is probably responsible for a portion of plaintiff’s condition, still defendants take plaintiff as they find him, and will not be absolved from liability because of the fact that he is obese. Plaintiff has cooperated and has lost approximately 70 pounds by dieting.
Dr. Bordelon conceded that plaintiff is partially permanently disabled.
The trial judge did not favor us with written reasons, but considering all the factors in the instant case, we cannot say he abused the large discretion granted him in making awards.
For the reasons assigned the judgment of the district court is affirmed at appellants’ costs.
Affirmed.